603 F.2d 744
 79-2 USTC P 9539
 CA 79-3145 UNITED STATES of America, and William D. Runge,
Special Agent of Internal Revenue Service, Appellees,
v.
Ms. Cynthia RICHTER, Manager, Missouri Savings Association,
and Missouri Savings Association, Mrs. Connie Moody,
Supervisor of the Loan and Discount Department, Southern
Commercial Bank, and Southern Commercial Bank, Mr. Jerry
Stern, Vice-President, President, Treasurer, Landmark Bank,
James T. Helm, Cashier, United Missouri Bank of Jefferson
County, and United Missouri Bank of Jefferson County,
Dale T. and Georgia S. Jackson, Intervenors-Appellants.
 No. 79-1064.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Aug. 9, 1979.
Decided Aug. 21, 1979.
 
 Samuel T. Vandover, of Godfrey, Vandover & Burns, Inc., St. Louis, Mo., on brief, for intervenors-appellants.
 Robert D. Kingsland, U. S. Atty., and Bruce D. White, Asst. U. S. Atty., St. Louis, Mo., on brief, for appellees.
 Before GIBSON, Chief Judge, VOGEL, Senior Circuit Judge, and BRIGHT, Circuit Judge.
 PER CURIAM.
 
 
 1
 This case is a consolidation of four appeals, taken by taxpayers Dale T. and Georgia S. Jackson (intervenors below), from the district court's[1] enforcement of four third-party summonses issued by the Internal Revenue Service (IRS). Appellants contend the district court erred in limiting their attempt to prove that IRS's sole purpose for issuing the summonses was to prepare a criminal prosecution of appellants and that the summonses were thus issued in "bad faith" and should not have been enforced, under the rule of United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). For the reasons hereinafter given, we affirm.
 
 
 2
 In early 1978, Special Agent William D. Runge, an employee of the Intelligence Division (now renamed the Criminal Investigation Division) of IRS, was assigned to determine the correct tax liability of the Jacksons for three previous years. In the course of this investigation, he issued a summons under section 7602 of the Internal Revenue Code[2] to each of four financial institutions,[3] requiring them to produce all records in their possession relating to the accounts, loans, or other financial transactions of taxpayers. As required by section 7609(a)(1) of the Code, Runge gave the Jacksons notice of these summonses. Pursuant to section 7609(b), taxpayers directed the financial institutions not to comply with the summonses and intervened in the subsequent enforcement proceedings brought by the government under sections 7402(b) and 7604(a).
 
 
 3
 Throughout this case, intervenors have argued that the summonses were invalid because the IRS issued them in "bad faith," i. e., solely for the purpose of gathering evidence for a criminal prosecution of the Jacksons. In order to garner proof of such a purpose, intervenors served a subpoena duces tecum on Agent Runge, requiring him to bring the complete IRS investigatory file to the summons enforcement hearing before the district court. Runge appeared at the hearing but did not produce the file, and the government moved to quash intervenors' subpoena. Reserving ruling on the subpoena and motion to quash, the district court proceeded to take testimony on the government's petition to enforce the summonses.
 
 
 4
 On direct examination, Runge testified: that the purpose of his investigation was to determine the Jacksons' correct tax liabilities for the three years in question; that the records sought by the summonses had "potential tax consequences" and were relevant and necessary to his investigation; that he was authorized, as a special agent, to issue the summonses; and that the IRS did not have possession of any of the materials sought and had no means other than the summonses of obtaining the information. He also stated that, as of the date of the hearing, the IRS had not made a recommendation of criminal prosecution to the Department of Justice.
 
 
 5
 Intervenors' counsel was permitted to cross-examine Runge on these matters, and explored at length the reasons for, and the nature of, the investigation. The district court did not, however, allow intervenors to ask Runge two particular questions: (1) whether he or his assistant during the investigation, Special Agent Patrick Finnessey, attempted to enter the Jacksons' residence without their permission when they were not home; and (2) whether he or any other IRS agent under his direction conducted an automobile surveillance of the Jacksons. The government's objections to these two questions as irrelevant were sustained. Intervenors' counsel made offers of proof that the answer to each question would be yes, and that the information would be relevant because that "type of conduct . . . is not employed by any government agency that is trying to conduct a civil tax liability investigation."
 
 
 6
 After Runge was excused, Agent Finnessey was called as a witness by intervenors and was asked the same two questions as Runge about unauthorized entry of the Jacksons' residence and automobile surveillance of the Jacksons. Again, the government's objections on the ground of relevancy were sustained, and intervenors made the same offers of proof. The hearing then ended.
 
 
 7
 Sometime after the hearing, the district judge obtained the IRS investigatory file and examined it In camera for any evidence of institutional "bad faith" on the part of IRS. He found none.
 
 
 8
 On the basis of the evidence adduced at the hearing and the In camera inspection, the court concluded that intervenors had not met the burden of disproving a civil tax determination purpose, and that all the requirements for enforcement of an IRS summons, as set forth in United States v. LaSalle National Bank, supra, 437 U.S. at 318, 98 S.Ct. 2357, were met. Accordingly, the court entered a memorandum decision and order in each proceeding, granting the government's motion to quash intervenors' subpoena and enforcing the summonses. United States v. Richter, No. 78-1420C(4) (E.D.Mo. Dec. 28, 1978).[4] Intervenors timely filed notices of appeal and obtained a stay of each order pending appeal. This court has consolidated the appeals.
 
 
 9
 For reversal, appellants contend that the district court erred in limiting their attempt to prove institutional "bad faith" on the part of IRS in issuing the summonses. Specifically, the court is alleged to have erred (1) by quashing appellants' subpoena duces tecum, and (2) by preventing appellants from asking Agents Runge and Finnessey the two questions about attempted unauthorized entry of appellants' home and surveillance of appellants. The argument is that, if the court had enforced their subpoena or had permitted the two questions, appellants would have been able to prove that IRS's "institutional posture" was solely to gather evidence for criminal prosecution of appellants and that the summonses were thus issued in "bad faith" and should not have been enforced.
 
 
 10
 As noted above, the district court determined that the instant case was governed by United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), and on appeal neither party disputes this finding. The issue in LaSalle was whether the district court properly refused enforcement of two IRS summonses after finding that the special agent who issued them " 'was conducting his investigation solely for the purpose of unearthing evidence of criminal conduct . . . .' " Id. at 304, 98 S.Ct. at 2361. In reversing the court of appeals' affirmance of the district court, the Supreme Court agreed that a summons may not be issued under section 7602 in aid of a solely criminal investigation, but held that "whether an investigation has solely criminal purposes must be answered only by an examination of the Institutional posture of the IRS" and not by the "personal intent" of the special agent. Id. at 316, 98 S.Ct. 2357 (emphasis added). The court also stated that "those opposing enforcement of a summons . . . bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service." Id.
 
 
 11
 In this case, appellants recognize that they bear the burden of proof and that their argument of a solely criminal purpose behind the summonses must address the "institutional posture" of the IRS, rather than the "personal intent" of Agent Runge. They insist, however, that examination of the IRS file, which was sought by their subpoena, is essential to determine the IRS's "institutional posture," because interrogation of the individual agents can establish only the agents' personal motives or intent, and LaSalle clearly held these to be inadequate to show institutional "bad faith." If taxpayers in appellants' position cannot obtain the IRS investigatory files concerning them, then, appellants argue, the burden of proving a solely criminal "institutional posture," which LaSalle placed upon them, is impossible to meet.
 
 
 12
 The court in LaSalle relates certain requirements that must be met for an IRS summons to be enforceable.
 
 
 13
 First, the summons must be issued before the Service recommends to the Department of Justice that a criminal prosecution, which reasonably would relate to the subject matter of the summons, be undertaken. Second, the Service at all times must use the summons authority in good-faith pursuit of the congressionally authorized purposes of § 7602. (United States v. LaSalle, supra, 437 U.S. at 318, 98 S.Ct. at 2368.)
 
 
 14
 Testimony adduced at trial reveals that the IRS fulfilled the LaSalle requirements to obtain enforcement of the summonses in question here. First, the IRS issued the summonses before recommending to the Department of Justice (Department) that a criminal prosecution against the intervenors be undertaken. Indeed, there still has been no recommendation that the Department prosecute the matter. In addition, IRS Special Agent Runge has yet to recommend such action to his supervisor or district chief. Second, the testimony discloses that the IRS issued the summonses to gather financial information about the intervenors so as to ascertain their potential tax liability. Consequently, the record supports the district court's determination that the IRS utilized its summons authority in good faith.
 
 
 15
 Appellants also contend that they should have been permitted to ask Agents Runge and Finnessey about attempted unauthorized entry of the Jacksons' home and surveillance of the Jacksons. The information sought by these questions would have been relevant under LaSalle only if it bore upon the "institutional posture" of the IRS. Thus, appellants would have to have shown not only the unlawful or improper conduct of Runge or Finnessey, but also the direction or condoning of such conduct by the agents' superiors, or at least, some link between the acts and IRS policy or practice that would justify considering the agents' alleged misconduct as a part of the IRS's "institutional posture."
 
 
 16
 From appellants' offers of proof, however, it appears that the asserted relevancy of the questions depended entirely on a baseless inference namely, that the agents' misbehavior would, in itself, suggest in some way that the IRS intended to use the fruits of the investigation solely for criminal prosecution. The district court certainly did not err in excluding the questions as irrelevant.
 
 
 17
 The district court found from its In camera inspection of the IRS case file concerning intervenors that the information contained therein was consistent with trial testimony, and the district court used such information to buttress its decision. We do not rely on the court's In camera examination of the IRS file but, rather, focus on the evidence introduced at trial. Such testimony indicates that the IRS had not recommended the intervenors' case to the Department for criminal prosecution and that the IRS in issuing the summonses sought information it previously lacked for the purpose of determining the internal revenue tax liability of the intervenors. On the basis of the record, the intervenors failed to disprove the existence of a valid civil tax collection purpose for the IRS summonses and, therefore, the summonses should be enforced.
 
 
 18
 Affirmed. Mandate to issue forthwith.
 
 
 
 [1]
 The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 I.R.C. § 7602 provides:
 For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . , or collecting any such liability, the Secretary is authorized
 (2) To summon . . . any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax . . . to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry . . . .
 
 
 [3]
 Missouri Savings Association, Southern Commercial Bank, Landmark Bank, and United Missouri Bank of Jefferson County
 
 
 [4]
 The other decisions were United States v. Moody, No. 78-1421C(4) (E.D.Mo. Dec. 28, 1978); United States v. Stern, No. 78-1422C(4) (E.D.Mo. Dec. 28, 1978); and United States v. Helm, No. 78-1423C(4) (E.D.Mo. Dec. 28, 1978)