**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**GRAYSON COUNTY STATE BANK and**
**Lloyd Butts, Defendants-Appellees,**

**First Pentecostal Church, Etc.,**
**Intervenor-Appellee.**

**No. 80–1892.**

United States Court of Appeals,
Fifth Circuit.
Unit A

Sept. 21, 1981.

---

Janet Hellmich, Asst. U. S. Atty., Tyler, Tex., Joseph W. Clark, M. Carr Ferguson, Asst. Attys. Gen., Tax Div., Michael L. Paup, Chief, Appellate Sect., Charles E. Brookhart, R. Russell Mather, John F. Murray, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Johnson, Bromberg, Leeds & Riggs, Michael P. Carnes, Dallas, Tex., for intervenor-appellee.

Before CHARLES CLARK, TATE and SAM D. JOHNSON, Circuit Judges.

TATE, Circuit Judge:

The United States appeals from an order denying judicial enforcement, see 26 U.S.C. § 7604(b), of an Internal Revenue Service (IRS) administrative summons previously issued, see 26 U.S.C. § 7602, to the Grayson County State Bank, which had failed to respond. By the summons, in connection with the investigation of the tax liability of an individual taxpayer (the minister of the church), the IRS sought production of certain bank records pertaining to a church, as to which the taxpayer (the minister) had signature privileges or trustee assignment. Having permitted the church to intervene, the district court granted its motion to quash the summons. In so doing, the district court held: (1) granting the IRS the discovery of bank records so sought would impair the free exercise of religion by laying open to governmental examination the church's financial history; and (2) that 26 U.S.C. § 7605(c), which restricts IRS examination of "the books of account of a *church*," applied so as to restrict the IRS examination of the *bank* records of a

church. The government appeals, contending that the district court erred in both holdings. We agree and, therefore, reverse.

*Factual Context*

Section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602, grants the Internal Revenue Service the power to summon books and records, and to take the testimony of any individual for the purposes, *inter alia*, of ascertaining the correctness of a tax return and determining a taxpayer's correct tax liability. Section 7604 of the Code, 26 U.S.C. § 7604 grants authority to the federal district courts to issue orders compelling, through their powers of contempt, compliance with the IRS summonses.

Pursuant to Section 7602, the IRS in November 1978 issued a summons to Grayson County State Bank in connection with an ongoing investigation into the income tax liability of the minister of the First Pentecostal Church in Sherman, Texas for the years 1973, 1974, 1975, and 1976. The taxpayer had produced his personal financial records, but he refused to produce certain church records requested by the IRS. Officials of the church also refused to allow revenue agents to inspect any church records. The Grayson County State Bank through Lloyd Butts was ordered to appear before an IRS special agent to give testimony and produce certain specified taxpayer-related books and records "on (or on behalf of) the First Pentecostal Church, 601 N. Harrison, Sherman, Texas for the years 1973, 1974, 1975, and 1976 on which [the minister-taxpayer] has signature privileges and/or trustee assignment (See attachment)."[1]

On refusal of the bank to provide said records the IRS applied to the federal district court for enforcement of the administrative summons under Section 7604. A motion to intervene as defendant was granted to the First Pentecostal Church which filed a motion to quash the summons as constituting excessive governmental interference or entanglement with church affairs and because its enforcement would allegedly have a "chilling effect" on the free exercise of religion by church members.

The district court, as earlier noted, denied judicial enforcement of the IRS summons and quashed the summons on the grounds that (1) it violated the First Amendment free exercise of religion rights of the intervening church and (2) that the summons was not an authorized examination of *church* records because it was not conducted pursuant to 26 U.S.C. § 7605(c),[2] a provision restricting examination of such records.

---

1. The records subject to the taxpayer-minister's signature privilege or trustee assignment specified by the attachment to the summons were:
   1. Signature cards.
   2. Bank Statements for the period beginning January 1, 1973 through January 31, 1977.
   3. Cancelled checks, [*sic*]
   4. Deposit slips.
   5. Savings statements for periods beginning January 1, 1973 through January 31, 1977.
   6. Savings deposit slips.
   7. Savings withdrawal slips.
   8. Certificates of Deposit in the name of the First Pentecostal Church, Sherman, Texas, in effect and/or purchased during 1973, 1974, 1975, and/or 1976.
2. 26 U.S.C. § 7605 TIME AND PLACE OF EXAMINATION
       *   *   *   *   *   *
   (c) *Restriction on examination of churches.*—No examination of the books of

account of a church or convention or association of churches shall be made to determine whether such organization may be engaged in the carrying on of an unrelated trade or business or may be otherwise engaged in activities which may be subject to tax under part III of subchapter F of chapter 1 of this title (sec. 511 and following, relating to taxation of business income of exempt organizations) unless the Secretary (such officer being no lower than a principal internal revenue officer for an internal revenue region) believes that such organization may be so engaged and so notifies the organization in advance of the examination. No examination of the religious activities of such an organization shall be made except to the extent necessary to determine whether such organization is a church or a convention or association of churches, and no examination of the books of account of such an organization shall be made other than to the extent necessary to determine the amount of tax imposed by this title. [as added by § 121(f), Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487].

## I. *The First Amendment Issue*

In denying the IRS's application for enforcement and quashing the summons, the district court found that the summons in this case sought documents which would "lay open to government examination the entire financial history—including the manner in which the Church raises, invests, and spends funds—from all accounts that the Church's minister has signature privileges or trustee assignment" and that such disclosure would be a "burden upon the free exercise of the religious belief of [the church's] members." The district court found this clearly raised a substantial question that judicial enforcement of the summons would be an abusive use of the court's process that thus required the IRS to show some reason to justify its request. The court further found that, since civil tax liability for the years had prescribed, the government must come forward and show some interest by way of tax fraud, which it had not done; in this respect, the court pointed out that the government had produced no showing of probable cause to suspect that the minister had committed tax fraud.

█ The legal principles applicable are not in substantial dispute. In enforcement of an IRS summons under Section 7602 when the summons authority is necessary for "the effective performance of congressionally imposed responsibilities to enforce the tax code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies." *United States v. Euge,* 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980). "A defense against disclosure based upon religious objections can find First Amendment support only if the disclosure either serves to establish religion or impedes the free exercise of sectarian conviction. U.S.Const. Amend. 1. Government action can violate the establishment clause . . . if the end result is an excessive entanglement with religion." *United States v. Holmes,* 614 F.2d 985, 989 (5th Cir. 1980).[3] Free exercise of religion embraces two concepts: (1) freedom to believe, which is absolute; and (2) freedom to act, which conduct, however, is subject to regulation for the protection of society. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). (As the district court recognized, the present issue might arise only under the second concept, as the church and its members are unimpeded in their beliefs.)

█ Initially, the issuance of an IRS summons must meet a test of good faith as formulated in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The IRS must show that: (1) the investigation will be conducted pursuant to a legitimate purpose, (2) the inquiry may be relevant to the purpose, (3) the information sought is not already within the IRS's possession, and (4) the proper administrative steps have been followed. *Powell, supra,* 379 U.S. at 57–58, 85 S.Ct. at 255; *United States v. Holmes, supra,* 614 F.2d at 987–88.

█ Appellee's argument that the IRS did not meet the *Powell* test is easily rejected: A valid purpose was established, namely, to investigate the correct tax liability of the minister; the records sought were limited only to those "on which [the taxpayer had] signature privileges and/or trustee assignment" for the applicable years, indicating relevance of the inquiry; the church has not claimed that the IRS is in possession of this information; and notice of the summons was provided to the taxpayer and the church as required by 26 U.S.C. § 7609 (1976).[4]

█ Once a prima facie case for enforcement is shown, the burden shifts to the taxpayer to show enforcement would be an abuse of the court's process. *Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255; *Holmes, supra,* 614 F.2d at 988.

As the Supreme Court held in *Powell,*

---

3. The district court noted that although the church's objection was couched partially in "establishment clause" language, the claim was in essence grounded in the free exercise clause and was treated as such.

4. The church argues that the notice required by § 7605(c) was not given. As we hold § 7605(c) not applicable to this summons, appellee's claim is not pertinent.

the Government need make no showing of probable cause to suspect fraud unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process, predicated on more than the fact of re-examination and the running of the statute of limitations in ordinary tax liability.

379 U.S. at 51, 85 S.Ct. at 251.

The church, citing *United States v. Citizens State Bank*, 612 F.2d 1091 (8th Cir. 1980), contends that the enforcement of the summons would result in a "chilling effect" upon the free exercise of the religious beliefs of its members. In *Citizens State Bank* the government issued a summons to the bank requesting *all* bank records relating to the accounts of the taxpayer in question and of the organization of which he was president. The Eighth Circuit found that the appellants met their initial burden by making a prima facie showing of an arguable First Amendment infringement. *Id.* at 1094. In the instant case, the church's reliance on *Citizens State Bank* is misplaced. The organization there in question was "a voluntary association of citizens who were opposed to the current operation of the IRS and who made efforts to bring about changes in the United States taxation system." *Id.* at 1093. The conclusion that an IRS summons of this organization's records would produce a "chilling effect" on membership is readily apparent.[5] However, allowing the IRS access to information to determine the correct tax liability of the taxpayer, the church's minister, does not restrict the church's freedom to espouse religious doctrine nor to solicit members or support. *United States v. Holmes*, 614 F.2d at 989. Furthermore, the church has

presented no evidence that enforcement of this summons would restrict the religious activities of its members.[6]

Further, even if the enforcement would place an indirect burden on some First Amendment rights, we recognized in *United States v. Holmes* :

> The Supreme Court has employed a two part balancing test in determining when such conduct is protected by the free exercise clause. First, plaintiff must show a burden on the exercise of his religion by the law under review. Second, the burden will be upheld only if the government interest outweighs the degree of impairment of free exercise rights. *See Wisconsin v. Yoder*, 406 U.S. 205, 214, 92 S.Ct. 1526, 1532, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 1793, 10 L.Ed.2d 965 (1963).

614 F.2d at 989.

We have recognized that compliance with a properly narrowed summons may result in "only an incidental burden upon [the] free exercise of religion," *U. S. v. Holmes*, 614 F.2d at 989; *Hearde v. Commissioner*, 421 F.2d 846 (9th Cir. 1970), and that "[b]alanced against the incidental burden on church religious activities is the substantial government interest in maintaining the integrity of its fiscal policies... This interest is sufficiently compelling to justify any incidental infringement of plaintiff's First Amendment rights." *Holmes*, 614 F.2d at 990.

We therefore disagree with the district court's conclusion that First Amendment rights of the church or its members were implicated by the issuance of the present summons. The summons was issued to secure access to records in the possession of a

---

**5.** Here the IRS summons was limited to (1) specified types of documents, (2) on which the taxpayer-minister had signature privilege, (3) for a restricted time span. Compare the broad scope of documents requested by the summons directed to the church itself in *Holmes*, 614 F.2d at 987 n.3, and by the summons in *Citizens State Bank*, 612 F.2d at 1093 n. 3. Furthermore, the court in *Citizens State Bank* indicated a more limited summons would be enforceable, emphasizing that "our decision will

only rarely serve to limit the reach of an IRS summons." *Id.* at 1094.

**6.** Additionally the order of the district court recognized in footnote that "[u]nlike the Church in *Holmes*, this Church has no option to limit IRS access to church records by foregoing its tax-exempt status since the records are not requested under a § 7605(c) examination of the Church."

bank, in connection with a taxpayer investigation, to examine those records of the bank pertaining to the church that were relevantly connected with the taxpayer's financial activity for the tax years of the investigation. Under the relevant facts, no substantial showing is made of abusive use of the summons, for its issuance does not constitute any significant burden upon the free exercise of religious activity by the church or its members.

■ The appellee church nevertheless contends that the district court's conclusions to such effect are factual findings and subject to displacement on appellate review only if clearly erroneous, Fed.R.Civ.P. 52(a). However, it is well settled that the clearly-erroneous limitation does not apply to the review of a district court's legal conclusions and inferences drawn from the facts, and that the appellate court is free to make an independent determination from the same facts of the determinative legal conclusions and inferences. *United States v. Mississippi Valley Generating Company*, 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961); *Spray-Bilt, Inc. v. Ingersoll-Rand World Trade, Ltd.*, 350 F.2d 99, 103 (5th Cir. 1965); 9 Wright & Miller, Federal Practice and Procedure, § 2588 at 750, § 2589 at 753 (1971). (Here, the principal facts relevant to our determination are undisputed—the issuance, scope, and purpose of the summons.)

II. *The Section 7605(c) Issue*

■ The second issue presented on appeal is whether the court below erred in holding that the IRS, in its attempt to obtain and examine bank records pertaining to the church, is limited to an examination under Section 7605(c) of the Internal Revenue Code, 26 U.S.C. § 7605(c).[7] The IRS correctly contends that § 7605(c) is not applicable in the examination of such bank records.

Section 7605(c) contains two limitations. The first requires that no examination of the "books of account of a *church*" shall be made *to determine whether* such organization *is engaged in the carrying on of an unrelated trade or business or may be otherwise engaged in* "taxable activities"[8] unless the IRS gives the church written notice of such audit; the second limitation requires that such examination must be restricted to the extent necessary to determine the amount of tax imposed upon an unrelated business activity of the church. Paragraph (c) was added to Section 7605 by the Tax Reform Act of 1969[9] as an administrative provision in connection with an amendment to Section 511 of the Code, which made the unrelated business income tax provisions of the Code applicable to churches.[10] The purpose of Section 7605(c) was to protect churches from the administrative burden of "unnecessary tax audits" so as not to interfere with the internal financial matters of the church.[11] This section, therefore, imposes some restriction, but it does not preclude examination of church records.

Here, however, the summons sought to be enforced by the IRS is directed at records

**7.** See text of 26 U.S.C. § 7605(c) at note 2.

**8.** Churches are generally exempt from income taxes; however, 26 U.S.C. §§ 511, 512 provide for tax on the unrelated business income of charitable organizations, including churches.

**9.** Section 7605(c) was added by Sec. 121(f), Tax Reform Act of 1969, Pub.L. No. 91–172, 83 Stat. 487 (1969).

**10.** Section 511 was amended by Sec. 121(a), Pub.L. No. 91–172, 83 Stat. 536 (1969).

**11.** The Senate Finance Committee, concerning the extension of unrelated business tax to churches, stated

The bill contains several administrative provisions including one providing that no audit of a church, its integrated auxiliaries, or a convention or association of churches is to be made unless the principal internal revenue officer for the region believes the church may be engaged in a taxable activity and notifies the church in advance of the examination. This provision is intended to protect churches from unnecessary tax audits in the interest of not interfering with the internal financial matters of churches.

S.Rep. No. 91–552, 91st Cong., 1st Sess. *reprinted in* [1969] U.S.Code Cong. & Ad.News 2027, 2097.

of the Grayson County State Bank, not at books of account of the First Pentecostal Church.

In interpreting paragraph (b) of Section 7605,[12] which prohibits a second inspection of a taxpayer's records absent written notice to the taxpayer, the courts have narrowly construed the analogous language "taxpayer's books of account". The courts have consistently found that Section 7605(b) is a limitation upon the examination of a taxpayer's *"books of account"* and "does not apply to an examination of books of account of a third person." *Geurkink v. United States*, 354 F.2d 629, 631 (7th Cir. 1965); *Hall v. Commissioner of Internal Revenue*, 406 F.2d 706, 710 (5th Cir. 1969). *See also: United States v. Krilich*, 470 F.2d 341, 350 (7th Cir. 1972), *cert. den.* 411 U.S. 938, 93 S.Ct. 1897, 36 L.Ed.2d 399 (1973); *Hinchcliff v. Clarke*, 371 F.2d 697, 700 (6th Cir.) *cert. den.* 387 U.S. 941, 87 S.Ct. 2073, 18 L.Ed.2d 1327 (1967); *United States v. Howard*, 360 F.2d 373, 380 (3rd Cir. 1966); *Bouschor v. United States*, 316 F.2d 451, 457 (8th Cir. 1963); *Application of Magnus*, 299 F.2d 335, 336 (2d Cir.), *cert. den.* 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499 (1962). "This prohibition applies by its express terms only to the *taxpayers'* records; it did not prevent the appellants from seeking information from other sources, such as the bank, regarding the taxpayers' possible liability." *DeMasters v. Arend*, 313 F.2d 79, 86 (9th Cir. 1963); "the statutory restriction against second examinations applies only to the taxpayer's own records, and not to records of third parties like the Bank." *United States v. Chemical Bank*, 593 F.2d 451, 458 (2d Cir. 1979).

In the instant case the IRS investigation is being conducted in order to determine the correct tax liability of the taxpayer-minister, not to determine whether the church is engaged in unrelated, taxable activities. Under consistent judicial interpretations of comparable provisions, the records sought by the IRS are not books of account of the church. Therefore, Section 7605(c) is not applicable and does not preclude enforcement of the summons against the present bank records pertaining to the church.

*Conclusion*

Accordingly, we find the district court's order denying judicial enforcement of the administrative summons issued to the Grayson County State Bank must be VACATED and REMANDED for further proceedings in accordance with this opinion.

VACATED and REMANDED.

---

12. U.S.C. § 7605(b)

    (b) *Restrictions on examination of taxpayer.*—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.