STANLEY SIGELBAUM and LISA RUTH SIGELBAUM, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sigelbaum v. Commissioner
Docket No. 28240-83.
United States Tax Court
T.C. Memo 1986-472; 1986 Tax Ct. Memo LEXIS 141; 52 T.C.M. (CCH) 630; T.C.M. (RIA) 86472; September 23, 1986. Peter J. Stromer, for the petitioners. Patricia Anne Golembiewski, for the respondent. JACOBS
MEMORANDUM OPINION JACOBS, Judge: Respondent determined a deficiency in petitioners' 1981 Federal income tax in the amount of $4,359, an addition to the tax for negligence or intentional disregard of rules and regulations, pursuant to section 6653(a)(1), [1] in the amount of $217.95, and an addition to tax under section 6653(a)(2) for increased interest on that part of the underpayment of tax which is due to negligence or intentional disregard of rules and regulations. [2] After concessions, the remaining issues for decision are: (1) whether petitioners are entitled to claimed deductions for charitable contributions totaling $15,525; (2) whether petitioners are liable for the addition to the tax under sections 6653(a)(1) and 6653(a)(2); and (3) whether the United States should be awarded damages pursuant to section 6673. *143 Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Stanley Sigelbaum and Lisa Ruth Sigelbaum, husband and wife, resided in Hialeah, Florida at the time they filed their petition. In 1977, Mr. Sigelbaum organized the Church of the Lake (the Church), an entity which was chartered by Universal Life Church, Inc. of Modesto, California (ULC). Mr. Sigelbaum was the president and minister of the Church; he was the only authorized signatory for the Church's bank account. Petitioners were married on October 30, 1978; thereafter, Lisa Ruth Sigelbaum became the Church's treasurer. During 1981, Mr. Sigelbaum wrote six checks on petitioners' joint checking account totaling $15,525 (constituting 49 percent of petitioners' 1981 adjusted gross income) to ULC. These checks were deposited in the Church's account. The Church, in turn, used its funds to reimburse petitioners for their personal expenses, [3] including payment of the monthly mortgage due on their residence, [4] their utility bills and automobile expenses. *144 In their 1981 return, petitioners deducted their purported contributions to ULC, as well as the mortgage interest expense. From 1977 through 1982, [5] petitioners held weekly meetings in their home, solicited membership in the Church, and counseled Church members. Other members of the Church issued checks to the Church which Mr. Sigelbaum deposited in the Church account. Within a few days or weeks of each such "donation" by Church members, the Church transferred to each "donor" an amount equal to 98 percent of the "donation." The only donations that were not followed by such reimbursement were donations for $50 or less. Respondent disallowed petitioners' 1981 claimed charitable contribution deductions to the Church, asserting that such contributions were not made to a qualified recipient organization. Petitioners contend that: (1) they made deductible charitable contributions to ULC in the amount of $15,525; (2) the addition to tax under sections 6653(a)(1) and 6653(a)(2) are unwarranted; and (3) section 6673 is unconstitutional. Petitioners bear the burden of proving that they are entitled to the claimed charitable *145 contribution deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules or Practice and Procedure. Section 170(a) allows as a deduction a contribution or gift made within the taxable year to those entities described in section 170(c). To qualify as an entity described in section 170(c), the Church must satisfy both an organizational and operational test. If the Church fails to satisfy either test, it does not qualify. Section 1.501(c)(3)-1(a)(1), Income Tax Regs.
Petitioners do not argue that the Church is a qualified charitable organization in its own right. Rather, they claim that the qualified charitable status of ULC attaches to the Church because the Church was chartered by ULC. In Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974), ULC was held to be exempt under section 501(c)(3). [6] However, that holding applied only to the individual parent church involved therein; it was not a group exemption. Davis v. Commissioner,81 T.C. 806, 815 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985). The Church is not an exempt organization merely *146 by virtue of having been chartered by ULC. Its status as a qualified charitable organization must be separately determined. Hall v. Commissioner,729 F.2d 632 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Universal Life Church, Inc. v. United States,582 F.Supp. 79 (N.D. Cal. 1984); American New Covenant Church v. Commissioner,74 T.C. 293 (1980). Here, the Church failed to satisfy the requisite operational test because its earnings, at least in part, inured to the benefit of petitioners in violation of section 170(c)(2)(C). Accordingly, the Church does not qualify as an organization described in section 170(c) to which contributions may be deducted under section 170(a). A charitable contribution is synonymous to a gift; a gift is a voluntary transfer to another without consideration. DeJong v. Commissioner,36 T.C. 896 (1961), affd. 309 F.2d 373 (9th Cir. 1962). *147 Mr. Sigelbaum was the only authorized signatory on the Church bank account. He had unfettered control over all funds transferred to the Church; thus, because he retained such control, there was no "contribution" to the Church in 1981. See Stephenson v. Commissioner,79 T.C. 995, 1003 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984); Davis v. Commissioner,supra.
Petitioners claim that their contributions were made to ULC. Petitioners introduced copies of six of their cancelled checks, totalling $15,525, each bearing a date in 1981. Although each of the cancelled checks were made payable to ULC, each was deposited into the Church's bank account, and the Church did not transfer any of its funds to ULC, except as filing fees and in exchange for supplies. Thus, we do not believe that petitioners actually made a contribution to ULC in 1981. Petitioners bear the burden of proving that no part of their underpayment was due to negligence or intentional disregard of the rules and regulations. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Petitioners knowingly claimed a deduction as a charitable contribution for *148 monies used to pay nondeductible household expenses. They are literate and intelligent adults. As such, they should have known better than to deduct as a charitable contribution amounts channeled from themselves to a "church" which were then used to pay their personal living expenses. See Davis v. Commissioner,81 T.C. at 820-821. Petitioners deliberately chose to disregard the rules and regulations with respect to income taxes. Therefore, respondent's determination that petitioners are liable for additions to tax for 1981 pursuant to sections 6653(a)(1) and 6653(a)(2) is sustained. As to section 6653(a)(2), the addition is to be computed on an underpayment of $4,359. Respondent also seeks damages pursuant to section 6673. Section 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained primarily for delay or that the taxpayer's position is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the *149 Secretary and shall be collected as part of the tax. Petitioners argue that section 6673 infringes on their constitutional right to petition the Government for redress of grievances, or, in the alternative, that they are not within the ambit of the statute. As we noted in Bell v. Commissioner,85 T.C. 436 (1985), this argument itself approaches frivolity. We have no doubt, for the reasons discussed in Bell, that section 6673 is constitutional. Prior to trial, respondent furnished petitioners with copies of cases that disallowed charitable contribution deductions in circumstances similar to that of petitioners. Thus, petitioners knew that their position was frivolous and groundless, yet they continued to pursue their case. Upon careful consideration, we award damages to the United States pursuant to section 6673 in the amount of $2,000. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and as in effect during 1981. ↩
2. Petitioners paid respondent $6,748.75 in respect of their 1981 determined deficiency after their petition in this case was filed.↩
3. In his opening statement, petitioners' counsel stipulated that part of the Church's funds were used to pay petitioners' personal expenses. ↩
4. During 1981, the Church was located at petitioners' personal residence.↩
5. Petitioners ceased operating the Church in 1982.↩
6. The Internal Revenue Service has announced that it will no longer recognize the tax-exempt status of the Universal Life Church, Modesto, California. Announcement 84-90, 1984-36 I.R.B. 32↩ (September 4, 1984).